UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   AEROBOX COMPOSITE STRUCTURES, LLC           No. 11-07-10138 MA
         f/k/a Aerospace Composite Structures, LLC,

Debtor.

### ORDER DENYING MOTION TO COMPEL REJECTION OF PATENT AND TECHNOLOGY LICENSE [AGREEMENT] AND/OR FOR RELIEF FROM THE AUTOMATIC STAY TO EXERCISE APPLICABLE NONBANKRUPTCY RIGHTS

THIS MATTER is before the Court on the Motion to Compel Rejection of Patent and Technology License and/or for Relief from the Automatic Stay to Exercise Applicable Nonbankruptcy Rights ("Motion") filed by Tubus Bauer GmbH ("Tubus Bauer"), by and through its attorneys of record, Sherin and Lodgen LLP (Thomas H. Curran and Matthew L. Mitchell). The Motion requests the Court to compel the Debtor to reject the pre-petition Patent and Technology License Agreement ("License Agreement") between Tubus Bauer and Aerospace Composite Structures LLC, and/or to lift the automatic stay to permit Tubus Bauer to cancel the License Agreement. The Unsecured Creditor's Committee (the "UCC"), Aerobox Composite Structures, LLC, formerly known as Aerospace Composite Structures LLC ("Aerobox" or the "Debtor"), and Posterus Corporation, the Debtor's post-petition financier, oppose the Motion. The Court held a final hearing on the Motion on July 20, 2007 and took the matter under advisement. At issue is whether 11 U.S.C. § 365(c)(1) precludes a debtor-in-possession from assuming an executory contract, regardless of whether the debtor-in-possession has, in fact, sought to assume the contract, or intends to assign the contract to another entity. After consideration of the relevant code sections and the applicable case law, the Court finds that 11 U.S.C. § 365(c)(1) does not prohibit a debtor-in-possession from assuming an executory

1

contract. Accordingly, the Motion will be denied.

FACTS

Aerobox filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 23, 2007. Pre-petition, Aerobox and Tubus Bauer entered into the License Agreement pursuant to which Tubus Bauer granted Aerobox an exclusive license within North America to use certain patent rights and confidential information for the "in house" manufacture and use of Tubus Polypropelene honeycomb, and a non-exclusive license in North America for the use of certain patent rights and confidential information to manufacture Tubus Polypropelene honeycomb for resale as value added thermoplastic sandwich panels. *See* License Agreement, ¶¶ 1.2 and 1.3 (Exhibit 1).

The term of the License Agreement is for a period of 15 years, beginning January 10, 2004, with automatic renewal for an indefinite term, unless either party terminates the License Agreement with three months notice. *See* License Agreement, ¶ 12.1 (Exhibit 1). The License Agreement provides for assignment only after prior written approval by Tubus Bauer, but provides further that Tubus Bauer will not unreasonably withhold its approval. *See* License Agreement, ¶ 3.1[1] (Exhibit 1). All monetary consideration due Tubus Bauer for the use of the license and patent rights under the License Agreement has been paid in full. As of the date of the final hearing on the Motion, Tubus Bauer's representative, Rainer Duchene, testified that he is not aware of any failures of the Debtor to comply with any of the terms of the License

---

[1] Section 3.1 of the License Agreement provides, in full:
> The license granted under this Agreement can only be assigned by [Aerobox] or brought into a partnership or a company after prior written approval by [Tubus Bauer] although such approval shall not be unreasonably withheld. [Tubus Bauer] can refuse to grant this approval.

2

Agreement.

The License Agreement contains an *ipso facto* clause that provides for termination of the License Agreement if Aerobox "becomes insolvent or is adjudged bankrupt, liquidates its business, makes an assignment for the benefit of creditors or a receiver or trustee is appointed to administer or conduct all or a substantial party of [Aerobox's] business or property." *See* License Agreement, ¶ 12.2. To date, Debtor has not sought to assume or assign the License Agreement as part of its reorganization efforts under Chapter 11.

## POSITIONS OF THE PARTIES

Tubus Bauer asserts that the License Agreement is an executory contract that cannot be assumed or assigned under 11 U.S.C. § 365(c)(1), such that the Debtor must either be compelled to reject it, or the automatic stay must be lifted since the Debtor is precluded as a matter of law by operation of 11 U.S.C. § 365(c)(1) from assumption or assignment of the License Agreement. Tubus Bauer relies primarily on *In re Catapult Entertainment, Inc.,* 165 F.3d 747 (9th Cir. 1999), which held that the plain language of 11 U.S.C. § 365(c)(1) compels application of a "hypothetical test" to determine whether an executory contract can be assumed or assigned. *Catapult,* 165 F.3d at 750. Under the "hypothetical test", if applicable nonbankruptcy law precludes assignment of an executory contract to a third party, a debtor may not assume or assign the contract notwithstanding that the debtor may have no intention whatsoever of assigning the contract at issue to a third party. *Id.* at 755.

The UCC acknowledges that several courts have applied the "hypothetical test" to 11 U.S.C. § 365(c)(1), but urges the Court to apply the "actual test" articulated by the First Circuit in *Institut Pasteur v. Cambridge Biotech Corp.,* 104 F.3d 489 (1st Cir. 1997), or the test adopted

3

and employed by the court in *In re Footstar, Inc.,* 323 B.R. 566 (Bankr.S.D.N.Y. 2005) (the "Footstar Test").[2]  Under the "actual test" the court must make a case-by-case inquiry to determine "whether the nondebtor party . . . *actually* was being 'forced to accept performance under its executory contract from someone other than the debtor party with whom it originally contracted.'" *Cambridge Biotech,* 104 F.3d at 493 (emphasis in original)(quoting *Summit Inv. & Dev. Corp. v. Leroux (In re Leroux),* 69 F.3d 608, 612 (1st Cir. 1995)).

The Debtor and the UCC also question whether the License Agreement is an executory contract, and contend further that Tubus Bauer's absolute refusal to consent to the Debtor's assumption or assignment of the License Agreement is contrary to the terms of the License Agreement which provide that Tubus Bauer will not unreasonably withhold consent to assignment.

## DISCUSSION

As a preliminary matter the Court must determine whether the License Agreement is an executory contract, since, if it is not an executory contract, 11 U.S.C. § 365, which restricts assumption and assignment of executory contracts and unexpired leases, does not come into play. The Bankruptcy Code does not define "executory contract." Generally, a contract is

---

[2] In *Footstar,* the bankruptcy court reasoned that the use of the term "trustee" in 11 U.S.C. § 365(c)(1) should not automatically be read to substitute the term "debtor-in-possession" such that the prohibition against assignment and assumption under 11 U.S.C. § 365(c)(1) is limited to situations where the trustee, rather than the debtor-in-possession, seeks to assume an executory contract. *Footstar,* 323 B.R. at 573.  Under *Footstar,* the debtor-in-possession would be precluded from *assignment*, since assignment would force the non-debtor party to the contract to accept performance from or render performance to an entity other than the debtor, but the debtor-in-possession can assume an executory contract because it is "*not* 'an entity other than' itself." *Footstar,* at 575 (emphasis in original).

4

executory for purposes of § 365(a) when each party to the contract has ongoing duties and obligations such that the contract remains materially unperformed on both sides. *In re Wagers,* 340 B.R. 391, 409 (Bankr.D.Kan. 2006) (citing 3 Collier on Bankruptcy ¶ 365.02[1]).[3] While the Court recognizes that the monetary consideration required under the License Agreement has been paid in full, the Court finds that the License Agreement is executory due to the continuing material duties and obligations of both parties to the License Agreement, including Aerobox's duty not to sell the thermoplastic core separately and to maintain confidentiality (*See* Articles 1.4 and 4.2) and Tubus Bauer's duty to defend the patent against validity challenges of third parties (*See* Article 7.2). *Cf. Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1045 (4th Cir. 1985) (finding the non-exclusive license agreement to use patented technology was executory based on "[t]he unperformed, continuing core obligations of notice and forbearance in licensing").[4] *See also In re Kmart Corp.,*

---

[3] *See also In re Busetta-Silvia,* 308 B.R. 537, 540 (Bankr.D.N.M. 2004), *rev'd on other grounds,* 314 B.R. 218 (10th Cir. BAP 2004)(noting that the Tenth Circuit has defined "executory contract" generally as "a contract that has not as yet been fully completed or preformed [sic] and in which future obligations remain, or in which material performance remains due on both sides.")(citing *United States v. Myers (In re Myers)*, 362 F.3d 667, 672-73 (10th Cir.2004)(citations omitted.)); *In re Botter,* 261 B.R. 269, (Bankr.D.Kan. 2000) (noting that "[c]ourts typically rely on Professor Countryman's more detailed definition: 'A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.'")(quoting Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L.Rev. 439, 446 (1973)(remaining citations omitted).

[4] *See also, Univ. of Conn. Research & Dev. Corp. v. Germain (In re Biopolymers, Inc.),* 136 B.R. 28, 30 (Bankr.D.Conn. 1992)(rejecting the trustee's argument that license agreement was not executory because the obligations were illusory, de minimus, or remote, and adopting the reasoning of *Lubrizol* in concluding that the license agreement to make, use and sell products under a patent constituted an executory contract); *In re Access Beyond Tech. Inc.,* 237 B.R. 32, 43 (Bankr.D.Del. 1999) (concluding that the patent license agreement was executory because "[e]ach party had at least one material duty to . . . refrain from suing the other for infringement

5

290 B.R. 614, 618 (Bankr.N.D.Ill. 2003) (noting that "'[g]enerally speaking, a license agreement is an executory contract as such is contemplated in the Bankruptcy Code.'")(quoting *In re Novon Intern. Inc.,* 2000 WL 432848, *4 (W.D.N.Y. 2000)).

Pursuant to 11 U.S.C. § 365, a trustee, or a debtor-in-possession imbued with the rights and powers of a trustee[5], may assume or reject any executory contract or unexpired lease. 11 U.S.C. § 365(a). This power to assume or reject is not absolute, however, and is limited by subsection (c), which provides, in relevant part:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if--
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
> (B) such partes does not consent to such assumption or assignment[.]

11 U.S.C. § 365(c)(1).

As noted above, there is a split in authority regarding the construction and application of 11 U.S.C. § 365(c)(1). *Compare Catapult,* 165 F.3d 747 (9th Cir. 1999) *with Cambridge Biotech,* 104 F.3d 489 (1st Cir. 1997).[6] A majority of the circuit courts[7] construing 11 U.S.C. §

---

of any of the patents covered by the license."). *But cf. In re Gencor Indus., Inc.,* 298 B.R. 902, 911-912 (Bankr.M.D.Fla. 2003) (finding that an irrevocable patent licensing agreement which included patent defense clause as well as ongoing obligation of patent holder not to sue licensee for infringement which is inherent in all licensing agreements was insufficient to make the agreement executory for purposes of § 365).

[5]*See* 11 U.S.C. § 1107 ("Subject to any limitations on a trustee serving in a case under this chapter . . . a debtor in possession shall have all the rights. . . and powers . . . of a trustee serving in a case under this chapter.").

[6]The Tenth Circuit has not decided the issue presented here. In *In re LGX, LLC,* 336 B.R. 601, *3 (10th Cir. BAP 2006)*, an unpublished decision of the Tenth Circuit Bankruptcy

6

365(c)(1) have adhered to the "hypothetical test" espoused by *Catapult. See, e.g., In re Sunterra Corp.,* 361 F.3d 257 (4th Cir. 2004); *City of Jamestown v. James Cable Partners (In re James Cable Partners),* 27 F.3d 534, 537 (11th Cir. 1994); *In re West Electronics, Inc.,* 852 F.2d 79 (3rd Cir. 1988). In *Catapult,* the Ninth Circuit examined the language of 11 U.S.C. § 365(c)(1), which "by its terms bars a debtor in possession from *assuming* an executory contract without the nondebtor's consent where applicable law precludes *assignment* of the contract to a third party." 165 F.3d at 750 (emphasis in original). To read the statute otherwise and allow a debtor in possession to assume any executory contract as long as no assignment was contemplated improperly rewrites the statute to prohibit "assumption *and* assignment, rather than assumption *or* assignment." *Id.* at 751. The Ninth Circuit thus held that "where applicable nonbankruptcy law makes an executory contract nonassignable because the identity of the nondebtor party is material, a debtor in possession may not assume the contract absent consent of the nondebtor party." *Id.* at 754-755.

Using the "hypothetical test" the Court must determine whether applicable nonbankruptcy law excuses the non-debtor party from accepting performance from or rendering

---

Appellate Panel, the panel acknowledged that federal common law preventing non-consensual assignment of patents is the "applicable law" under § 365(c)(1), but the issue before the panel was whether the *trustee* could *assign* a patent license, not whether the *debtor-in-possession* is precluded by § 365(c)(1) from *assuming* a patent license.

[7]The Fifth Circuit adopted the "actual test" for purposes of construing 11 U.S.C. § 365(e)(2)(A)'s exception to the prohibition against enforcement of ipso facto clauses. *See In re Mirant Corp.,* 440 F.3d 238, 248-249 (5th Cir. 2006) (rejecting the Third Circuit's hypothetical approach to § 365(c)(1)).

However, as noted by the bankruptcy court in *Footstar,* "the great majority of lower courts have taken the view that the courts should apply an 'actual test' in construing the statutory language so as to permit assumption where the debtor in possession in fact does not intend to assign the contract." *Footstar,* 323 B.R. at 569 (collecting cases at n.2).

7

performance to a hypothetical third party. Because the License Agreement involves use of a patent, "applicable law" means federal patent law. *See Catapult,* 165 F.3d at 750 ("[O]ur precedents make it clear that federal patent law constitutes 'applicable law' within the meaning of § 365(c)"); *Cambridge Biotech,* 104 F.3d at 492 (acknowledging that the federal common law of presumptive nonassignability of patents qualifies as 'applicable law' within the meaning of § 365(c)(1)); *In re Hernandez,* 285 B.R. 435, 438 (Bankr.D.Ariz. 2002) (applying federal patent law in construing § 365(c)(1)); *In re LGX, LLC,* 336 B.R. 601, *3 (10th Cir. BAP 2006) (unpublished opinion) (acknowledging that bankruptcy courts have held that the federal common law preventing the non-consensual assignment of patent licenses constitutes "applicable law" for purposes of § 365(c)(1)). Federal patent law generally prohibits assignment of both exclusive and non-exclusive license agreements absent consent of the licensor. *Catapult,* 165 F.3d at 750 (noting that under federal patent law, "nonexclusive patent licenses are 'personal and assignable only with the consent of the licensor.'")(quoting *Everex Sys., Inc. v. Cadtrak Corp. (In re CFLC, Inc.),* 89 F.3d 673, 680 (9th Cir. 1996); *Hernandez,* 285 B.R. at 440 (finding that federal patent law requires consent to assignment by the licensor whether the license is exclusive or non-exclusive). Tubus Bauer does not consent to the assignment of the License Agreement. Therefore, using the "hypothetical test", Tubus Bauer asserts that 365(c)(1) prohibits the Debtor from assuming or assigning the License Agreement, regardless of whether the Debtor has, in fact, has attempted to assume it, and regardless of whether the Debtor has, in fact, attempted to assign it to a third party. This Court disagrees, and finds that § 365(c)(1) does not compel application of the "hypothetical test" when determining whether a debtor-in-possession is barred from assuming an executory contract.

8

As discussed by the court in *Cambridge Biotech,* the debtor-in-possession is not materially distinct from the pre-bankruptcy entity that is a party to the executory contract. *Cambridge Biotech,* 104 F.3d at 493 (reasoning that "[w]here the particular transaction envisions that the debtor-in-possession would assume and continue to perform under an executory contract, the bankruptcy court cannot simply presume as a matter of law that the debtor-in-possession is a legal entity *materially* distinct from the prepetition debtor with whom the nondebtor party . . . contracted.")(emphasis in original)(citing *Leroux,* 69 F.3d at 613-614). Indeed, the Supreme Court has determined in *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482, 496 (1984) that "it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition . . ." Therefore, because the limitation contained in § 365(c)(1) is aimed at protecting non-debtor parties to personal services contracts from being forced to accept service from or render service to an entity other than the entity with whom it originally contracted, it is appropriate to determine whether the nondebtor party is *actually* being forced to accept performance under its executory contract from an entity other than the debtor. *Cambridge Biotech,* 104 F.3d at 493.

Similarly, the bankruptcy court in *Footstar* reasons that it makes perfect sense for the statute, which uses the term, "trustee," to prohibit the trustee from assuming or assigning a contract, because the trustee *is* an "entity other than the debtor in possession" but it makes no sense to read "trustee" to mean "debtor in possession." *Footstar,* 323 B.R. at 573. Doing so

> would render the provision a virtual oxymoron, since mere assumption [by the debtor in possession] (without assignment) would *not* compel the counterparty to accept performance from or render it to "an entity other than" the debtor.

*Id.*

9

This Court agrees.

Thus, where the debtor-in-possession seeks to assume, or, as is the situation in the instant case, where the debtor-in-possession has neither sought to assume nor reject the executory contract but simply continues to operate post-petition under its terms, 11 U.S.C. § 365(c)(1) does not prohibit assumption of the contract by the debtor-in-possession and cannot operate to allow the non-debtor party to the executory contract to compel the Debtor to reject the contract. In reaching this conclusion, the Court finds that the "actual test" articulated in *Cambridge Biotech,* and the reasoning of the court in *Footstar,* is the better approach to § 365(c)(1) when determining whether a debtor-in-possession is precluded from assuming an executory contract.

The UCC also argues that because the License Agreement contemplates assignment, and requires Tubus Bauer not to unreasonably withhold its consent, Tubus Bauer's categorical refusal to consent cannot be considered reasonable. The UCC, therefore, contends that the Motion should be denied because it constitutes a unilateral attempt by Tubus Bauer to alter the bargained-for terms of the License Agreement. The Court agrees that the License Agreement does not prohibit assignment, and that by requiring Tubus Bauer not to unreasonably withhold its consent to assignment, the assignment term of the License Agreement is less restrictive than the general federal common law prohibition against assignment of patents absent consent of the licensor. But because the Court concludes as a matter of law that 11 U.S.C. § 365(c)(1) cannot prevent a debtor-in-possession from assuming a pre-petition executory contract, the Court need not determine whether the assignment provision in the License Agreement constitutes "preconsent" by Tubus Bauer which would render 11 U.S.C. § 365(c)(1) inapplicable. *Cf. In re Supernatural Foods, LLC,* 268 B.R. 759, 805 (Bankr.M.D.La. 2001) (finding that "§ 365(c)(1) is

10

not applicable to prohibit assignment, if the parties have opted out of generally applicable law prohibiting assignment, as long as the contractual assignability is enforceable under applicable non-bankruptcy law.")   And because Tubus Bauer asserts no grounds for relief from the automatic stay other than its argument that § 365(c)(1) bars assumption of the License Agreement as a matter of law, relief from the automatic stay is not warranted.

Based on the foregoing, the Motion is DENIED.

/s/ Mark B. McFeeley
_____
MARK B. McFEELEY
United States Bankruptcy Judge

COPY TO:

Peter Lubitz
Traiger & Hinckley llp
Attorney for Debtor
880 Third Avenue
New York, NY 10022

Thomas H. Curran
Matthew L. Mitchell
Sherin & Lodgen LLP
Attorneys for Tubus Bauer GmbH
101 Federal Street
Boston, MA 02110

Mark E. Freedlander
Michael J. Roeschenthaler
William C. Price
McGuireWoods LLP
Attorneys for the UCC
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222

Robert H. Jacobvitz
Local counsel for the UCC
500 Marquette NW, Suite 650
Albuquerque, NM 87102-5309

Chris W Pierce
Attorney for Posterus Corporation
2531 Wyoming Blvd. NE
Albuquerque, NM 87112

11