UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: AEROBOX COMPOSITE STRUCTURES, LLC,    No. 11-07-10138 MA

      Debtor.

### ORDER DENYING DEBTOR'S MOTION FOR ORDER (I) IMPOSING SANCTIONS FOR VIOLATIONS OF THE STAY BY JADA HOLLINGER AND (ii) ENFORCING SECTION 362 & CHAPTER 11 PLAN INJUNCTIONS AGAINST JADA HOLLINGER AND RELATED RELIEF

THIS MATTER is before the Court on the Debtor's Motion for Order (I) Imposing Sanctions for Violations of Stay by Jada Hollinger and (ii) Enforcing Section 362 & Chapter 11 Plan Injunctions Against Jada Hollinger and Related Relief ("Motion").[1] The Motion asserts that Ms. Hollinger's actions in connection with a proceeding before the human rights commission ("NM-HRC"), which is part of the State of New Mexico Department of Labor, Human Rights Division, that resulted in a judgment against Aerospace Composite Structures, now known as Aerobox Composite Structures, LLC ("Aerobox" or "Debtor") issued after the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code violated the automatic stay imposed by 11 U.S.C. § 362, and requests the Court to enter an order against Jada Hollinger enforcing the automatic stay and declaring the judgment void.

At the final hearing on the Motion, counsel for the Debtor stated that the Debtor does not seek an award of monetary damages or attorneys' fees against Ms. Hollinger as part of its

---

[1]Since the filing of the Motion, Jada Hollinger filed a Motion to Allow Late-Filed Proof of Claim by Jada Hollinger (Docket # 249) and a Motion for Allowance of Administrative Claim by Jada Hollinger (Docket # 247) (together, "Hollinger Motions"). Although the Hollinger Motions relate to the judgment issued by the NM-HRC, they will not be considered in connection with the Debtor's Motion.

1

requested relief. Ms. Hollinger opposes the Motion, asserting that the actions taken as part of the grievance process before the NM-HRC are specifically excepted from the automatic stay under 11 U.S.C. § 362(b)(4)[2] as an exercise of a governmental unit's police or regulatory power.

The Court held a final hearing on the Motion on March 20, 2008 and took the matter under advisement. After consideration of the undisputed facts in light of the record of this proceeding, and being otherwise sufficiently informed, the Court finds that the proceeding before the NM-HRC, which process was initiated by Ms. Hollinger before the filing of the Debtor's voluntary petition, but continued and concluded post-petition, including Ms. Hollinger's post-petition participation in that proceeding, falls within the scope of 11 U.S.C. § 362(b)(4)'s exception to the automatic stay. Consequently, the Motion will be DENIED.

## FACTS

The relevant facts are not disputed. Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 23, 2007. In 2006, Jada Hollinger notified the NM-HRC of an alleged violation of the Human Rights Act, NMSA 1978 § 28-1-1 thru § 28-1-15, asserting that the Debtor's termination of her employment in May of 2006 was retaliatory and based on sexual discrimination. In October of 2006, the NM-HRC issued a letter to the Debtor stating that

---

[2]Section 362(b)(4) provides, in relevant part:
> The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay --
>> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power[.]
>
> 11 U.S.C. § 362(b)(4).

2

attempts to mediate the dispute were unsuccessful and that the matter would be investigated pursuant to the Human Rights Act. *See* Motion, Exhibit A. In June of 2007, a complaint was filed against the Debtor by the NM-HRC pursuant to NMSA 1978 § 28-1-7 (Cum. Supp. 2007) (*See* Motion, Exhibit B), and on August 31, 2007, a Final Order was issued by the NM-HRC awarding Ms. Hollinger actual damages in the amount of $31,714.40. *See* Motion, Exhibit D. The Final Order also required Defendant to provide the Chairman of the NM-HRC with proof of a diversity and sexual harassment training program by an approved consulting firm within sixty days of the date of entry of the Final Order. *Id.* Jada Hollinger is listed as a creditor on Debtor's schedules and was included on the Debtor's mailing matrix. She received notice of the filing of Debtor's bankruptcy proceeding.

## DISCUSSION

Upon the filing of a voluntary petition under the Bankruptcy Code, 11 U.S.C. § 362 imposes an automatic stay applicable to all entities which prohibits actions against the debtor or against property of the bankruptcy estate. 11 U.S.C. § 362(a). The scope of the automatic stay is very broad[3] and specifically prohibits

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).

An exception to the broad scope of the automatic stay is a governmental unit's enforcement of its

---

[3]*See In re Sullivan,* 357 B.R. 847, 853 (Bankr.D.Colo. 2006)("The scope of the automatic stay is extremely broad.")(citing *In re Gagliardi,* 290 B.R. 808, 814 (Bankr.D.Colo. 2003)).

3

police or regulatory power. 11 U.S.C. § 362(b)(4). The Bankruptcy Code does not define the meaning of "police or regulatory power" within the context of 11 U.S.C. § 362(b)(4). *In re Mohawk Greenfield Motel Corp.,* 239 B.R. 1, 6 (Bankr.D.Mass. 1999). Consequently, in applying the "police or regulatory power" exception to the automatic stay, courts have developed the following tests: (1) the "pecuniary purpose" test; and (2) the "public policy" test. *Id.*; *Eddleman v. U.S. Dept. of Labor,* 923 F.2d 782, 790 (10th Cir. 1991), *overruled in part on other grounds, Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson,* 968 F.2d 1003 (10th Cir. 1992).

"Under the 'pecuniary purpose' test, the court asks whether the government's proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property and not to matters of public policy" such that the government proceeding will not fall within the exception to the automatic stay if the primary purpose is the protection of the government's pecuniary interests. *Eddleman,* 923 at 791 (citing *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 942 (6th Cir. 1986) and *In re State of Missouri,* 647 F.2d 768, 776 (8th Cir. 1981)).[4] The "public policy" test, on the other hand, distinguishes between government proceedings aimed primarily at effecting public policy (which *are* excepted from operation of the automatic stay), and those proceedings aimed primarily at adjudicating or advancing private rights (which are *not* excepted from the stay). *Id. (citing Edward Cooper Painting,* 804 F.2d at 942).

Ms. Hollinger contends that the action before the HRC falls within the police and

---

[4] *See also, Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.),* 128 F.3d 1294, 1297 (9th Cir. 1997) ("If the government action is pursued solely to advance a pecuniary interest of the governmental unit, the stay will be imposed.")(citing *Thomassen v. Division of Med. Quality Assurance (In re Thomassen),* 15 B.R. 907, 909 (9th Cir. BAP 1981)).

4

regulatory power exception to the automatic stay. The Debtor counters that because the action was initiated by Ms. Hollinger and resulted in a monetary award in favor of Ms. Hollinger, the action before the HRC and Ms. Hollinger's participation in that action advanced Ms. Hollinger's private rights. Consequently, Debtor argues that the proceeding does not fall within the exception to the automatic stay. This Court disagrees.

The grievance procedure under the Human Rights Act is contained in NMSA 1978 § 28-1-10 (Cum. Supp. 2007). It provides that a person aggrieved by unlawful discriminatory practice may file a written complaint with the NM-HRC. NMSA 1978 § 28-1-10(A) (Cum. Supp. 2007). The director of the NM-HRC must investigate the claim and determine whether there is probable cause; if so, the director will attempt "to achieve a satisfactory adjustment of the complaint through persuasion and conciliation." NMSA 1978 § 28-1-10(C)(Cum. Supp. 2007). The aggrieved party can elect to seek a trial of the matter before the district court instead of proceeding before the NM-HRC. NMSA 1978 § 28-1-10(J)(Cum. Supp. 2007).[5] If resolution of the matter through "persuasion and conciliation" fails, and the complainant has not elected to seek a trial of the matter before the district court, "the commission *shall* issue a written complaint *in its own name* against the respondent." NMSA 1978 § 28-1-10(F)(Cum. Supp. 2007)(emphasis added). This language supports a finding that the process before the NM-HRC constitutes a governmental unit's exercise of its police and regulatory powers to prevent and

---

[5]That section provides, in relevant part:
> The complainant may seek a trial de novo in the district court in lieu of a hearing before the commission, provided the complainant requests from the director, in writing, a waiver of complainant's right to hearing within sixty days of service of written notice of a probably cause determination by the director.
> NMSA 1978 § 28-1-10(J) (Cum. Supp. 2007).

5

deter discriminatory practices in the workplace. This is true despite the fact that the direct beneficiary of the process, when the resulting order includes a monetary award, is the complainant.[6] Furthermore, the Final Order included a directive for the Debtor to obtain and provide proof of attendance for a diversity and sexual harassment training program. This additional requirement clearly falls within the exception to the automatic stay under either the "pecuniary" or "public policy" tests. And when such exercise of police and regulatory power is coupled with a monetary award of back pay, the entire action remains within the exception, provided there has been no action to *collect* the monetary award.[7]

*In re Pincombe,* 256 B.R. 774 (Bankr.N.D.Ill. 2000) involves facts similar to those present here. In *Pincombe,* a default order was entered against the debtor and his corporations by the Illinois Department of Human Rights ("IDHR"). 256 B.R. at 777. Thereafter, the default order was served upon the Illinois Human Rights Commission ("IHRC") which, in turn, entered

---

[6] *See Mohawk,* 239 B.R. at 8-9 (stating that "back pay awards are a necessary methodology to serve the public purpose envisioned by the underlying statutes[ ]" and concluding that "[t]he preservation of MCAD [Massachusetts Commission Against Discrimination]'s authority to determine damages on account of discriminatory acts is consistent with public policy and the protection of protection of public safety and welfare; and the benefit to the public arising from the continuing capability of MCAD to identify and sanction discriminatory behavior overshadows any associated pecuniary benefit to the victim of that discrimination."). *See also, General Telephone Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 326, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)("When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.")(citation omitted).

[7] *See* 11 U.S.C. § 362(b)(4) (". . . including the enforcement of a judgment *other than a money judgment*, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power.")(emphasis added); *EEOC v. McLean Trucking Co.,* 834 F.2d 398, 402 (4th Cir. 1987)(holding that when the EEOC sues to enjoin violations of anti-discrimination laws and couples such action with a claim for back pay, the EEOC is exercising its police and regulatory power, and is not subject to the automatic stay until the monetary claims are reduced to judgment).

6

an order of default against the debtor based on charges of sex discrimination, sexual harassment, and retaliatory discharge. *Id.* Both orders were entered after the entry of the debtor's chapter 7 discharge. *Id.* The bankruptcy court had little trouble determining that the actions of the IDHR and the IHRC fell within the exception to the automatic stay as a governmental unit's exercise of police and regulatory power. *Id.* at 781. In considering whether the individual complainant violated the automatic stay, the bankruptcy court noted that the complainant first participated with the IDHR more than five months before the debtor filed his bankruptcy petition. *Id.* Furthermore, the complainant's participation in a fact finding conference relating to complainant's charges against the debtor also occurred before the filing of the bankruptcy proceeding. *Id.* The court then considered whether the complainant's acquiescence in the continued proceedings before the IDHR violated the proceeding. The court rejected debtor's argument that complainant's refusal to withdraw the charge violated the automatic stay, finding that the applicable federal statutes governing the withdrawal of a discrimination charge allows the EEOC to proceed based on its own authority, even if the complainant were to withdraw its charges. *Id.* at 781-782. Based on the EEOC's independent power to pursue the claim, and the fact that the complainant took no independent action outside the administrative proceedings, the bankruptcy court concluded that the complainant did not violate the automatic stay. *Id.* at 782.

In the instant case, there is no evidence before the Court that Ms. Hollinger took any action with regard to her discrimination action against the Debtor other than filing the initial grievance with the NM-HRC, which occurred *before* the Debtor filed its voluntary petition, and participating in the action *brought by the commission* after the bankruptcy was filed. Thus, similar to *Pincombe,* Ms. Hollinger's only post-petition activities consisted of her ongoing

7

participation in the grievance process before the NM-HRC which was initiated well before the Debtor filed its Chapter 11 proceeding. The Human Rights Act provides for a complainant to forgo proceedings before the NM-HRC and instead file a lawsuit in the district court. *See* NMSA 1978 § 28-1-10(F) (Cum Supp. 2007). There is no evidence that Ms. Hollinger elected to initiate proceedings on her own in state district court. Nor has any action been taken post-petition to attempt to collect the monetary award granted in the Final Order. As noted by the Tenth Circuit in *Eddleman,* "[a]ctual collection of the back-pay claims must proceed according to normal bankruptcy procedures." 923 F.2d at 791.

Based on the foregoing, IT IS HEREBY ORDERED that the Motion is DENIED.

    _____
    MARK B. McFEELEY
    United States Bankruptcy Judge

Date entered on docket: April 10, 2008

COPY TO:

Peter Lubitz
Traiger & Hinckley llp
Attorney for Debtor
880 Third Avenue
New York, NY 10022

Charles R. Hughson
Attorney for Jada Hollinger
6709 Academy NE, Suite A
Albuquerque, NM 87109

8